## John Kelly v. The State.

No. 1906.    Decided June 12, 1912.

Rehearing denied June 28, 1912.

**1.—Burglary—Railway Car—Custody.**

Upon trial of burglary of a railroad car, there was no error in showing that the agent of said railroad company, who was asked in whose custody the said car was, that it was in his custody, without first introducing the rules of the company authorizing such custody, as the question was who exercised the actual control thereof. Article 1334, Code Criminal Procedure.

**2.—Same—Charge of Court—Sufficiency of the Evidence.**

Where, upon trial of burglary of a railroad car, the evidence sustained a conviction, and the court properly submitted the law of the case applicable to the facts, there was no error.

**3.—Same—Charge of Court—Recent Use of Intoxicant Liquors—Insanity.**

Where, upon trial of burglary, the evidence did not call for any charge on temporary insanity produced by anything than by the voluntary recent use of ardent spirits, there was no error in refusing to submit a requested charge thereon; the court having correctly submitted the issue from the standpoint of the recent use of ardent spirits.

**4.—Same—Evidence—Self-Serving Testimony.**

Upon trial of burglary, there was no error in refusing to admit in evidence the declarations of defendant after he was arrested, to show that he was drunk, etc.; besides the bill of exceptions did not show the relevancy of such testimony.

Appeal from the District Court of Grayson. Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Abney & Hassell,* for appellant.—On question of insanity by intoxicating liquors: Phillips v. State, 98 S. W. Rep. 868; Edwards v. State, 43 S. W. Rep., 112; Lyle v. State, 19 S. W. Rep., 903.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of insanity by intoxicating liquors: Phillips v. State, 50 Texas Crim. Rep., 482; Burton v. State, 46 id., 494; Edwards v. State, 38 id., 386.

PRENDERGAST, JUDGE.—Appellant was convicted for the burglary of a railroad car alleged to be occupied and controlled by N. C. Dorchester, and given the lowest penalty, two years in the penitentiary.

The State's evidence was this: Said Dorchester testified that he lived in Sherman, Grayson County, Texas, and was the agent there for the Houston & Texas Central Railroad Company; that he remembered the occasion of the reported breaking of a car standing on a certain street on one of the tracks of said railroad company on November 22, 1911; that said car was in his custody in said county and was not broken with his consent and he did not give his consent for any person to enter it or take anything therefrom.

Todd testified that he lived in Sherman on said date and was a clerk in the office of said railroad company. On that date he saw a car on the tracks of said company which had been broken; that the morning of that day he passed that car and knew that the seal was intact, the door was closed and the bolt was in; through the end of the bolt there was a hole or eye and through this had been passed a wire and a seal of lead foil had been clamped over the ends of the wire so that it would have been impossible to remove the bolt over the door without breaking the seal. After the removal of the seal access could be gained to the door by throwing a lever, the operation of which moved the door on its hinges and opened it.

Lance testified. He identified the date and said car as the other witnesses had done; that early in the afternoon of that day he saw appellant go to said car; that he (appellant) ran to the end of it, faced towards the other side of it, then ran back to the door. He (witness) saw him (appellant) take his pocket knife, cut the seal and drop it on the ground and then pick up the seal and hang it back where it had been and go away. About thirty minutes later he saw him leaving the car with a sack of flour on his back. On cross-examination he said from where he was he could not see the seal nor the knife and did not know that he cut the seal. The sack appellant had

on his back was a gunny sack, or tow sack and not a flour sack, and he did not know that flour was in it.

Potter testified, identifying the date, said car and the location thereof; that in the afternoon of that date he saw the appellant go to the car, open the door, throw a tow sack into and jump into the car; that he then saw the sack thrown out on the ground and appellant jumped out, placed a sack of flour on his back and walked away. On cross-examination he said it was a tow sack he put on his back and he did not know whether there was flour in it. It might have been meal or something else. He saw appellant then go north on a certain street but did not notice what then became of him.

This was the substance of the State's evidence. The appellant then introduced this testimony:

W. K. Palmer testified that he lived in Sherman and was a watchman; that together with Roy Reynolds he arrested appellant in the early afternoon about 2 o'clock on said date; that appellant was drunk when he arrested him; that he then had no flour on him. On cross-examination he said when a man is drunk and down he is drunk; as long as he can get along he did not think he is drunk.

Roy Reynolds testified he assisted in arresting appellant; appellant was drinking at the time; he was not drunk and down, but pretty full; that he noticed no flour then on his clothes. On cross-examination he testified appellant walked between them to town without assistance; when a man is down and unable to navigate he called him drunk; until he is, he did not consider him drunk.

Mrs. Carr testified she remembered when appellant was arrested; early in the afternoon of that date appellant went to her store with a tow sack on his back; he was very drunk; he bought a dime's worth of something, possibly cheese, from her then. While in her store he put a sack down in a corner of the room and went out and left it; that she paid no attention to it then. When she was summoned as a witness in the case she remembered about the sack and thought about his being charged with stealing flour; she thought the sack might have had something to do with the case and took it to the courthouse on the trial. The sack was then exhibited to her and in it was found what was identified by a carpenter as ornamental tops for porch column after they are turned and dressed at a planing mill, about eighteen inches long. The sack was a tow sack, or gunny sack. There was no flour on appellant when he was in her store. On cross-examination she said she knew the man casually, not intimately. That when in her store on that occasion he was drunk, so drunk that she ordered him out of the store.

John Fahey testified that he was a plumber and lived in Sherman; knew appellant and had him employed for some time before he was arrested in this case; that he had been on a drunk for several days since the Sunday before he was arrested (which would be Monday and Tuesday—Nov. 22 was Wednesday). He saw him about 10 o'clock

on the day he was arrested; that he did not report for work for several days before that, but on that date about that hour appellant came to him and the witness saw he was in no condition to work; that he told him to go and sober up; that he looked wild; that he was either drunk or doped he did not know which, had with him a half pint bottle about half full of a liquid he took to be whisky; he did not know what it was; that he saw him again between 11 and 12 o'clock and he was still in the same condition; he stared and looked wild; that he took his meals at this witness' house; that he brought no flour there. Appellant roomed at a little shanty near there and there was no flour in his room. On cross-examination he said appellant had been in said condition about three days; that he did not see him when he was arrested; that he did not know whether he was drunk or not; that there was something the matter with him. The above is in substance the testimony in full.

One of appellant's bills shows that after said witness Dorchester had testified that he was agent of said railroad company he was asked by the State in whose custody the said railroad car was at the time it was claimed to have been entered by appellant. Whereupon, by permission of the court, appellant's attorneys were permitted to ask him if the custody of that car was indicated or specified by any written rule. The witness answered: "Yes, we have a great many. We have a number of rules that specify our duties." He was then asked if his testimony about the custody of that car will be based on the written rules of the company. The witness answered: "I wasn't going into the rules." "Q. It will be a statement of the custody of the car by the written rules of the company." A. "Yes, sir." Whereupon, the bill states, "counsel made the objection that the proposed testimony of the witness would not be the best evidence, which objection was by the court overruled and defendant excepted; whereupon, counsel for the State asked the witness the following question: "Q. In whose custody was that car at that time?" To which defendant's counsel made the objection that the custody of the car is defined and prescribed by the written rules of the company, as disclosed by the testimony of the witness, and that his answer would be a conclusion and hearsay and not the best evidence, which objection was by the court overruled and witness permitted to answer: "It was in mine," to which ruling and to all of which rulings the defendant then and there in open court excepted."

It is our opinion that this bill shows no error whatever. The question of who was in custody of said car was not a conclusion, such as is contended for by appellant but it was a question of fact and a witness could testify, as this witness did, who had custody of the car. Neither was it hearsay, nor would the rules of the company be the best evidence. The rules of the company could not determine the fact of who was in the custody of the car as indicated by the testimony of the witness. His duties as agent may have been prescribed

by rules and said rules may or may not have given him the right to the custody of the car. Whether or not, as a matter of fact, he was in custody of the car could not have been established by the rules as we take it. In theft the statute, Code Criminal Procedure, article 1334, provides that the possession of the person so unlawfully deprived of property is constituted by the exercise of actual control and management "whether the same be lawful or not." King v. State, 43 Texas, 351; Crockett v. State, 5 Texas Crim. App., 526; Moore v. State, 8 Texas Crim. App., 496. So in cases of burglary it would be proper, as 'was charged in the indictment in this case, to prove who had the custody of the car; and whether the person charged to have the custody was the real owner, or rightfully or wrongfully in possession, as to the real owner, would make no difference. Certainly, the car was not in the custody, care or control of the appellant nor did he so claim and there is no intimation by the evidence, the bill or otherwise, that the appellant had any authority or right from any one to break and enter the same, nor was such right or authority claimed by him.

Appellant requested several special charges all of which were refused. He complains of the charge of the court in several instances. We think it is unnecessary to give in detail either the said special charges or the complaint of the charge of the court.

The court in the charge correctly stated the case to the jury; correctly defined burglary, force, breaking, entry and theft, as laid down by the statutes. Then followed with these charges:

"7. You are instructed that the indictment in this case, having charged that the burglarious entry was made by force in the daytime, with intent to commit the crime of theft, before you would be warranted in finding the defendant guilty, you must be satisfied from the evidence, beyond a reasonable doubt, that the entry was so made in the daytime by force directly applied to the railroad car and with the intent to commit the specific crime of theft.

"8. Now, bearing in mind the foregoing definitions of daytime, breaking, entry and theft, if you believe from the evidence beyond a reasonable doubt, that the defendant John Kelly at any time within five years next before the filing of the indictment herein, in the County of Grayson, State of Texas, by force in the daytime, did break and enter a railroad car under the control of N. C. Dorchester as charged in the indictment with intent to commit theft, you will find him guilty of burglary, and assess his punishment at imprisonment in the penitentiary for not less than two nor more than five years.

"8a. In this case evidence has been introduced in behalf of the defendant, to show at the time of the commission of the offense (if any) he was in a state of drunkenness, or intoxication, produced by the recent use of ardent spirits, and as to this phase of the case you are instructed:

"That neither intoxication nor temporary insanity of mind, produced by the voluntary recent use of ardent spirits, constitutes in this

State any excuse for the commission of crime, nor does intoxication mitigate the degree or penalty of crime, but evidence of temporary insanity, produced by such recent use of ardent spirits, should be considered in mitigation of the penalty attached to the offense for which the defendant is on trial.

"9. However, to be considered at all, the use of ardent spirits must have been indulged to the extent of producing temporary insanity, which is that degree of insanity that deprived the person of the capacity and power to distinguish between the right and wrong as to the particular act charged against him. In other words, 'temporary insanity' caused by drunkenness, is that condition of the mind directly produced by the use of ardent spirits, and where the state of intoxication reaches such a degree that the person becomes incapable of knowing that the act he is doing is wrong and criminal. Where such is the case, he is in a condition of temporary insanity within the meaning of the statutes.

"10. Now, if you believe from the evidence in this case, that the defendant, at the time of the commission of the offense for which he is on trial (if you find him guilty of such offense), was laboring under temporary insanity as above defined, produced by the voluntary recent use of ardent spirits, you will take such temporary insanity into consideration, in mitigation of the penalty you will attach to the offense, if from the evidence you believe defendant was guilty of any offense.

"11. On the other hand, if from the evidence you have a reasonable doubt whether or not the defendant entered the railroad car as charged in the indictment, then you will acquit the defendant. Or if from the evidence you believe beyond a reasonable doubt defendant entered the railroad car, as charged in the indictment, yet if from the evidence you have a reasonable doubt whether or not defendant, when he entered said car, if he did, had the specific intent to commit the crime of theft, then you will acquit the defendant and say by your verdict 'not guilty.' "

Then followed this with a correct charge telling the jury as the defendant had not testified not to consider or discuss, nor allude to it; then followed, in separate paragraphs, a charge on the presumption of innocence and reasonable doubt in accordance with the statutes and such charges as are generally given in criminal cases.

One of appellant's contentions is that where the undisputed evidence shows that an accused has been drunk for several days prior to the alleged offense, it is error to submit the question of the voluntary use of ardent spirits.

By his first charge appellant requested the court to instruct that even though they believed beyond a reasonable doubt appellant did break the car as alleged, yet, if they further believed from the evidence that at the time of breaking he was in such a mental state or condition, produced by the use of intoxicating liquor or other sub-

stance as not to have been conscious of what he was doing, or they had a reasonable doubt of it, to acquit him. By the second, he requested the court to charge that, even though the jury believed beyond a reasonable doubt that he did break the car as alleged, yet, if they further believed that at such time he was in such a mental state or condition, produced by the use of intoxicating liquor or other substance as not to have been conscious of what he was doing, to acquit him. There was no error in refusing these charges.

In our opinion the evidence did not call for any charge on temporary insanity, produced by anything other than intoxicating liquors. The charge of the court copied above, correctly and properly submitted the question of appellant's condition from the recent use of ardent spirits as called for by the law and the facts of this case. After careful consideration of all of appellant's requested charges and his objections and criticisms of the charge of the court, it is our opinion that they are not well taken but that all of the questions raised by appellant were sufficiently, properly and fully covered by the charge of the court above copied and in accordance with the evidence introduced on the trial. It is unnecessary to further state the appellant's several criticisms of the court's charge and of the special charges requested and refused.

Appellant has two other bills about the testimony. By one it is shown that "while the witness Claud Eartherly was on the stand testifying in behalf of defendant, and after it had been shown that when defendant was arrested he was taken to the office of the sheriff and from thence immediately to the county jail, and after the witness Eartherly had testified that he had observed defendant's conduct and heard him talk, he was asked the following question: "Q. State what defendant did and said at said time?" to which the State by her counsel objected as irrelevant and immaterial and self-serving, *which objection was by the court overruled,* to which ruling of the court defendant then and there excepted and now still excepts and presents this his bill of exceptions and asks that the same be allowed and made a part of the record in this cause.

"If the witness had been permitted to answer he would have testified that the defendant immediately after he was placed in a cell in the jail, called witness to said cell and said substantially: 'What am I here for?' That witness replied: 'You are in here for stealing a sack of flour,' and that thereupon defendant laughed loudly and said, 'What in the hell would I want with a sack of flour?' That witness left said cell and within two or three, or a very few minutes thereafter was again called by defendant and asked the same question, as above set out, and upon making the same reply that defendant again said substantially: 'Well what in the hell would I want with a sack of flour'; and that he was called to said cell and the same question substantially asked him, and the same statement substantially made by defendant, perhaps a dozen times.

"Defendant likewise offered the witness ———— Moore, to whom the same question was propounded, as herein set out, which was objected to by the county attorney for the same reason, and defendant reserved his objection thereto. The witness Moore would have testified substantially as would the witness Eatherly. All of said testimony was offered after it had been shown that the defendant at the time of his arrest was drunk or in an intoxicated condition and after the testimony of John Fahey to the effect that defendant had been on a drunk for three days preceding the day of the occurrence, and that on the day of the occurrence about 10 o'clock (the time of the occurrence being placed early in the afternoon of said day) the defendant had the appearance of being drunk or crazy or 'doped,' and because of said rulings of the court defendant presents his bill of exception No. 6, and asks that same be allowed and filed as a part of the record of this case."

We have given in full this bill or these bills. The bill shows, as copied above, that the court *overruled* the State's objections. Probably, appellant intended to say that the court *sustained* the objections. There is no reason given or shown by the bill why this testimony was admissible, nor does it show on its face that the said testimony proposed to be introduced was excluded and not admitted in evidence. The bill, as presented, shows no error whatever. But even if the said objections of the State were sustained and the testimony was excluded, they were properly sustained on the grounds stated in the bill.

The judgment will be affirmed.

*Affirmed.*